IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCHES OF:<br><br>One Purple Samsung Galaxy Note 9, S/N RF8KB2T2DCN | Magistrate No. 19-1092 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

1. I, Daniel M Kinzel, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being duly sworn, depose and say:

**INTRODUCTION AND AGENT BACKGROUND**

2. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3. I am a Task Force Officer with the United States Drug Enforcement Administration (DEA) having been employed as such for approximately the past two years. I am currently assigned to the DEA Pittsburgh District Office, Group 62. Prior to becoming a Task Force Officer, I was employed as a police officer with the West Homestead Borough Police Department for more than 18 years, where I served in the Narcotics Division for approximately two of those years.

4. Your Affiant has been involved in narcotics related arrests and the execution of search warrants that resulted in the seizure of narcotics, and assisted in the supervision of activities of informants who provided information and assistance resulting in drug buys. During the course of Your Affiant's training and experience, Your Affiant has become familiar with the methods and

1

techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies. In the course of conducting these investigations, Your Affiant has been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses, conducting physical surveillance, conducting and participating in short-term and long-term undercover operations including reverse undercover drug operations, consensual monitoring and recording of both telephonic and non-telephonic communications, analyzing pen register data, conducting court-authorized wire and oral interception electronic surveillance, and preparing and executing search warrants which have led to substantial seizures of narcotics, firearms, contraband, and evidence of criminal activity.

5.   During my assignment with the DEA, I have participated in a wide variety of international and domestic investigations, including money laundering, drug trafficking, and airport interdiction. I have been the case agent for major narcotic investigations that led to the indictment of numerous individuals. I have been the affiant for, and participated in, numerous wiretap investigations during which I have monitored hundreds of hours of conversations between drug dealers.

6.   I have received specialized training in multiple sessions and/or seminars on the sale and packaging of controlled substances, as well as firearms recognition and the characteristics of an armed gunman. I have utilized this training and experience and have participated in numerous significant arrests for illegal drug trafficking and/or the criminal possession/use of firearms. Because of these investigations, my training and experience, conversations with other agents, and interviews of drug users and traffickers, I am familiar with the methods and language used by traffickers to smuggle, store, and distribute drugs, collect and launder drug proceeds, and avoid being caught by law enforcement officers.

7.	As part of my duties, I am authorized to conduct investigations of persons who engage in drug trafficking offenses; specifically, the unlawful distribution of controlled dangerous substances in violation of Title 21, United States Code, Sections 841 and 846. I have obtained the information below through my direct involvement in this investigation and through other DEA Special Agents; Task Force Officers and local Police Officers. This affidavit is being submitted for the limited and specific purpose of supporting an application for a search warrant. Your affiant therefore has not included every fact known to him concerning the investigation.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8.	The device to be searched ("**TARGET DEVICE 1**") is a purple Samsung Galaxy Note 9 with Serial Number RF8KB2T2DCN. The device is further described in Attachment A.

9.	The device is currently in the DEA's custody and is stored at 1781 McKees Rocks Road, McKees Rock, PA 15136.

10.	The applied-for warrant would authorize the forensic examination of the listed device for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

11.	On May 1, 2019, Pennsylvania State Police were monitoring westbound traffic on Interstate 76, the Pennsylvania Turnpike, in Stoneycreek Township, Westmoreland County. The State Police observed a white Chevrolet Suburban, Pennsylvania Registration KVB-3113, following another vehicle too closely. The Suburban is registered to Jose RODRIGUEZ, whose listed residence is 2076 East Stella Street, Philadelphia, Pennsylvania. The State Police conducted a traffic stop of the Suburban for violating Pennsylvania motor vehicle law, PAVC Title 75, Section 3310.

12. Pennsylvania State Police made contact with the driver of the vehicle, who was identified as Ana A. RODRIGUEZ GONZALEZ through her Pennsylvania driver's license. RODRIGUEZ GONZALEZ spoke little to no English, creating an obvious language barrier. To overcome this barrier, the State Police used the Google translate application to communicate with RODRIGUEZ GONZALEZ.

13. During the stop, RODRIGUEZ GONZALEZ stated she was traveling from Philadelphia to Monroeville, Pennsylvania, to visit her boyfriend "Jose" for several days. However, upon questioning, RODRIGUEZ GONZALEZ did not know her boyfriend's last name. A State Police Trooper also observed that there was no luggage in the vehicle.

14. The State Police asked RODRIGUEZ GONZALEZ if they could inspect her vehicle, and RODRIGUEZ GONZALEZ consented. State Police looked under the rear of the vehicle and immediately identified an after-market, non-factory compartment. Based on the Troopers' training and experience, they suspected the compartment contained narcotics or firearms, and they detained RODRIGUEZ GONZALEZ.

15. Upon further inspection, the State Police were able to locate and access the opening to the hidden compartment. In the compartment, Police found approximately 4,000 bricks of suspected heroin packaged in clear vacuum sealed bags. A later test confirmed that the substances were heroin. At this time, RODRIGUEZ GONZALEZ was placed under arrest for possession with intent to distribute large quantities of heroin. State Police recovered **TARGET DEVICE 1** on top of center console of the vehicle. RODRIGUEZ GONZALEZ was transported to the Somerset County Jail.

## EVIDENCE COMMONLY GENERATED BY DRUG-TRAFFICKING AND ELECTRONIICALLY STORED IN CELLULAR TELEPHONES

16. Your Affiant is aware through both training as well as experience gained through multiple narcotics investigations, the targets of those narcotics investigations utilize cellular telephones to not only arrange meetings with their drug customers but also speak with fellow co-conspirators as well as their drug sources of supply. Your Affiant is also aware that these targets also utilize multiple cellular telephones at one time in an effort to not only thwart detection by law enforcement but also to compartmentalize their drug trafficking customers to one phone, their co-conspirators to another phone, and their drug source of supply to yet another phone.

17. Based upon my training and experience, I am aware that it is generally a common practice for drug traffickers to store the names and phone numbers of drug customers and photographs and video detailing illegal activities in cellular telephones. Because drug traffickers in many instances will "front" (that is, sell on consignment) controlled substances to their clients, and/or will be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances. Often drug traffickers keep "pay and owe" records to show balances due for drugs sold in the past ("pay") and for payments expected ("owe") as to the trafficker's supplier(s) and the trafficker's dealer(s). Additionally, drug traffickers must maintain telephone and address listings of clients and suppliers and keep them immediately available in order to efficiently conduct their drug trafficking business.

18. Persons involved in significant drug trafficking typically conceal within automobiles large amounts of currency, financial instruments, precious metals, jewelry and other items of value, and/or proceeds of drug transactions and evidence of financial transactions relating

to obtaining, transferring, secreting, or spending large sums of money derived from narcotic trafficking activities. This type of evidence can also be stored in applications that are commonly found on "SMART" cellular telephones, such as **TARGET DEVICE 1** that is referenced throughout this affidavit.

19. Members of DTOs often take group photographs with other enterprise members posing with paraphernalia, money and/or drugs. Many cellular telephones have a camera feature that is readily capable of capturing and storing these group photos.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

21. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how each device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

6

22. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

23. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how the device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

24. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

26. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27. I submit that this affidavit supports probable cause exists to believe that there has been a violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1), and 846.

28. Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search of **TARGET DEVICE 1**, more fully described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Daniel M. Kinzel
Task Force Officer
Drug Enforcement Administration

Sworn to and signed before me
this 10th day of May, 2019.

LISA PUPO LENIHAN
UNITED STATES MAGISTRATE JUDGE